UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Robert E. Wright,<br>*Plaintiff,*<br><br>*v.*<br><br>Tenergy Christ Water, LLC, William Tomasso,<br>Michael Tomasso, and Angelo Tomasso,<br>*Defendants.* | Civil No. 3:07cv924 (JBA)<br><br><br><br>November 20, 2008 |

**RULING ON PLAINTIFF'S OBJECTIONS TO
MAGISTRATE JUDGE MARGOLIS'S DISCOVERY RULING**

On October 4, 2007 [Doc. # 31], the Court referred this case, involving claims under the civil RICO statute and also under Connecticut law, to Magistrate Judge Joan Glazer Margolis for the purpose of supervising discovery. By written ruling dated April 11, 2008, Magistrate Judge Margolis disposed of five motions concerning certain discovery responses and the scope of discovery in general. (April 11, 2008 Ruling [Doc. # 61] (the "Discovery Ruling") at 3–4.) Now before the Court are Plaintiff Robert Wright's objections to this ruling, arguing that "many of the Magistrate Judge's Rulings were clearly erroneous and contrary to law." (Pl.'s Obj. [Doc. # 66] at 1.) For the reasons that follow, the Court overrules Plaintiff's objections, and approves and adopts the Discovery Ruling in full.

**I. Relevant Background**

In his Third Amended Complaint, Plaintiff claims that he was offered the presidency of Defendant Tenergy Water, LLC ("Tenergy")[1] as a bribe to Peter Ellef, but that the Defendants withdrew this offer shortly thereafter (on April 29, 2002) because "it was the

---

[1] As noted in Magistrate Judge's ruling, Tenergy Water, LLC is the predecessor entity to named Defendant Tenergy Christ Water, LLC. (Disc. Rul. at 5 n.11.)

wrong time to be establishing another possible link between [the Defendants] and Mr. Ellef." (3d Am. Compl. ¶¶ 21–22, 30.) Plaintiff alleges that the Defendants "were worried about federal law enforcement authorities who were 'looking at' William Tomasso and Mr. Ellef for possible corruption charges" and that, as a reward for the State giving improper financial assistance to Tenergy, Defendants "continued their efforts to reward Mr. Ellef by finding [less compensated] alternative employment" with a non-Tomasso-related company. (*Id.* ¶¶ 18, 30–33.) Wright further alleges that the Defendants, anticipating a prompt, favorable outcome of the criminal investigation, represented and reaffirmed from March 2003 to September 2005 that this alternative job would be short-term and that the Tenergy presidency would eventually be his. (*Id.* ¶¶ 33–35.) In early 2006, after Ellef and William Tomasso pleaded guilty to federal conspiracy charges, Plaintiff claims that the Defendants responded to his inquiries about the job offer by "pretend[ing]" they never had any such agreement "[i]n an attempt to avoid giving federal prosecutors another basis to claim they had given improper benefits and rewards to Peter Ellef." (*Id.* ¶¶ 36–39.)

II.   Discussion

In the Discovery Ruling, Magistrate Judge Margolis disallowed Plaintiff's broad discovery requests for information related to the criminal investigation of the Ellef-William Tomasso relationship as irrelevant to Defendants' motivation for their withdrawal of Plaintiff's employment agreement. Magistrate Judge Margolis based this decision on sworn statements by the federal prosecutor responsible for the day-to-day handling of the investigation that she was "not aware of any overt steps taken prior to April 29, 2002 regarding the investigation of a corrupt relationship between Peter N. Ellef and William Tomasso. Any such overt steps or action occurred after April 29, 2002." (Dannehy Decl. ¶ 3

2

Defs.' Ex. C.) From this, and absent any evidence from Plaintiff supporting his theory that Defendants' knowledge of the investigation motivated their job withdrawal, Magistrate Judge Margolis concluded that Plaintiff's discovery requests for pre-April 2002 material were based on impermissible "speculation and conjecture" and were only a "fishing expedition[]" engaged in with the hope of garnering support for plaintiff's claims. (Disc. Rul. at 9.)

Even though the magistrate judge recognized that Plaintiff additionally alleged that Defendants' misconduct continued beyond the job offer withdrawal—in the form of reaffirmations of the offer and eventual renunciation of it—her ruling denied discovery related to the criminal investigation and entered a protective order precluding discovery related to this investigation as irrelevant based on the Dannehy declaration. Plaintiff claims Magistrate Judge Margolis's rulings were clearly erroneous and contrary to law because: (1) he is entitled to impeach defendant's credibility with pre-April 29, 2002 bad acts that would be shown in the pre-April 29, 2002 investigation; (2) the ruling only considered the linkage between the criminal investigation and the withdrawal of Plaintiff's written employment agreement, not the other allegations of Defendants' conduct after the withdrawal which link the criminal investigation to the post-withdrawal inducements and promises finally renounced in 2006; and (3) the Dannehy declaration does not require the conclusion that Defendants lacked knowledge of the federal investigation before April 29, 2002.

Plaintiff's claim that denial of his access to the criminal investigation documents denies him impeachment evidence as to William Tomasso and Peter Ellef overlooks the fact that he has not been foreclosed from offering their felony convictions and sentencing

documents for impeachment purposes,[2] and he incorrectly assumes that he would additionally be permitted to offer evidence of all the circumstances leading to the convictions.

Plaintiff's objection that the scope of his discovery was improperly curtailed misses the point that any requests for information produced during this post-April 29, 2002 criminal investigation have still not been shown reasonably likely to lead to the discovery of admissible evidence. The alleged reaffirmations of the earlier withdrawn offer—which are alleged to have been made from March 2003 to September 2005 as a continuation of Defendants' "efforts to reward Mr. Ellef" (3d Am. Compl. ¶ 31)—were made while the bribery scheme was actively under investigation (*id.* ¶ 35), covering the period when Ellef was Co-Chief of Staff to the Governor from October 1997 to April 2002 (Stip. of Offense Conduct, Defs.' Ex. I). Thus, the substance of the criminal investigation is irrelevant to conduct which is alleged to have occurred subsequent to its scope. The undisputed chronology of events recited by Defendants is that Ellef left his position on the Governor's staff (where he was in a position to be bribed) on March 21, 2002, and that the alleged post-withdrawal reaffirmations occurred a year later, beginning in March 2003. While Plaintiff is free to pursue discovery about these alleged reaffirmations and the final renunciation in March 2006, after Ellef and Tomasso pleaded guilty, the records related to the criminal investigation have not been shown to be relevant.

Plaintiff's remaining objection relates to reliance on the Dannehy declaration for the

---

[2] Magistrate Judge Margolis also concluded that Plaintiff has access to all public documents from this prosecution—which Plaintiff does not dispute, but instead seeks to have Defendants produce the documents to him. This is not a proper basis for objection to the ruling.

conclusion that Defendants could not have known about any federal investigation at the time they withdrew Plaintiff's job offer.  Plaintiff's arguments are still is unsupported by any rebutting facts.  Indeed, the contrast between (a) Ellef's detailed and unequivocal denial of ever telling Plaintiff that his offer was withdrawn because of a then-pending investigation of the Ellef-Tomasso relationship (Ellef Decl. ¶¶ 5–10, Defs.' Ex. B) and (b) Plaintiff's incorporation of his allegations (*see* 3d Am. Compl. ¶ 30) in his deposition recitation that Ellef had a great personal interest in making sure Plaintiff was employed and was going to undertake efforts to make sure that happened (Wright Dep., Apr. 29, 2008, at 100:6–10) underscores the correctness of Magistrate Judge Margolis's decision to limit discovery absent any more substantive indication of a link between the investigation and the job loss.  Plaintiff's argument that the burdensomeness of this discovery was not demonstrated is also without merit.  Demonstrably irrelevant discovery is burdensome by definition because it should not be undertaken in the first place, and the declaration of Tomasso attorney Thomas Murphy gives further support by detailing the daunting scope of this discovery were it to be permitted.  (Murphy Decl. ¶ 3, Defs.' Ex. D.)  Plaintiff has not shown that the limitations Magistrate Judge Margolis imposed on discovery related to the criminal investigation are either clearly erroneous or contrary to law, and his assertions about inadequate meet-and-confer compliance are to no avail in challenging the Discovery Ruling.  *See* 28 U.S.C. § 636; Fed R. Civ. P. 72(a).

Notably, nothing in the Discovery Ruling limits Plaintiff's discovery related to the circumstances of the making, withdrawing, reaffirming, and renouncing of the job offer which is the subject of his Third Amended Complaint.  Magistrate Judge Margolis specifically ruled that Plaintiff was entitled to discovery for the period from March 2003

(when employment promises were reaffirmed by Defendants) to March 2006 (when finally renounced). The Court notes that Defendants represent that they complied with discovery on Defendants' ownership and investment interests in Tenergy at all times, which moots Plaintiff's objection to the March 2003–March 2006 limitation. Since Plaintiff apparently has this discovery, the Court need not address whether or how such information is evidence of Plaintiff's damages, in particular bonuses based on Tenergy's business performance.

Plaintiff argues that he should be entitled to discovery from non-party entities which are not claimed to have been involved in the alleged reaffirmations of Defendants' commitments, but he still offers no persuasive justification for this discovery. Plaintiff specifically objects to the portion of the Discovery Ruling finding that "Plaintiff's claims relating to the reaffirmations of commitments to employ plaintiff do not involve [the non-party entities], particularly when plaintiff alleges that the assurances of employment after 2002 were for 'a non Tomasso related company,' not something related to the alleged Tomasso 'enterprise.'" (Disc. Rul. at 12 (footnotes omitted).) Plaintiff supports his objection by citing paragraphs 47 through 53 of his Third Amended Complaint, but these factual allegations reference only Tomasso-related companies as involved in the RICO enterprise. Magistrate Judge Margolis determined that "plaintiff has presented no circumstances that justify the discovery into these non-parties," and Plaintiff has failed to show that this was clear error or legally incorrect.

Plaintiff claims that Magistrate Judge Margolis erred in denying his motion to compel Interrogatory 8 (Interrogatory 16 is not addressed by the ruling) directed to Michael Tomasso and any payments he made to benefit Ellef or people he had an interest in. This, too, lacks merit. Such discovery was permitted for the 2003–2006 period but not earlier

because whatever connection Michael Tomasso's conduct had with those who were indicted (whether or not that conduct was part of the prosecution), this has no demonstrated link to Plaintiff's employment offer at Tenergy as discussed above. As to all discovery regarding Michael and Angelo Tomasso's conversations involving Plaintiff, Ellef, and Tenergy, as well as production of all attachments to the written employment agreement, Defendants have agreed to produce them, mooting those objections.

Plaintiff also challenges Magistrate Judge Margolis' refusal to compel production of letters written on behalf of Ellef because they were never submitted to the sentencing judge, claiming they contain impeachment material. Plaintiff does not address Defendants' offer to submit the drafts *in camera*. However, to ascertain whether there is impeachment evidence, the Court requests that the letters be submitted for *in camera* inspection.

Finally, Plaintiff accuses Magistrate Judge Margolis of creating objections that were never interposed by Defendants. This appears incorrect when considering the actual objections interposed coupled with the motions to stay and for protective order. And, as Magistrate Judge Margolis found, Plaintiff still has shown no "compelling need" for Michael Tomasso's tax returns.

### III. Conclusion

In conclusion, it is clear from Magistrate Judge Margolis's thorough analysis and rulings that she had full comprehension of Plaintiff's claims and applied the correct legal standards. Plaintiff has not shown her Discovery Ruling to be either clearly erroneous or contrary to law.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 72.1(C)(2), the Ruling on Plaintiff's Four Motions to Compel, Defendants' Motion to Stay and on

7

Defendants' Motion for Protective Order [Doc. # 61] is hereby APPROVED and ADOPTED as the ruling of this Court and Plaintiff's objections [Doc. # 66] are OVERRULED. Defendants shall submit the sentencing letter to Chambers no later than December 1, 2008 for *in camera* review.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of November, 2008.